The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and get their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning, everybody. Please be seated. Welcome to the United States Court of Appeals for the Fourth Circuit. We have four cases on for hearing this morning. First is 22-4384, United States v. Shade. Mr. Kilbourn. Chief Judge, Judges, may it please the Court. I am James Kilbourn and it is my honor to represent Kewan Shade under the Criminal Justice Act in this appeal. The Court below described the defendant's arguments as a quote, saved by the unicorn argument with very, very technical points. As a defendant's appellate counsel, we are always looking for those very technical unicorn issues because our clients are overwhelmingly charged with federal crimes are convicted and the overwhelming majority of those convicted have their convictions and sentences affirmed. So we are like prospectors looking for gold nuggets trying to bring them to the Court's attention. In this case, Your Honor, I believe we do have an interesting issue that deserves your attention. Were you counsel below? Yes, I was actually, Your Honor. So I was the unicorn trainer below. Yes, sir, Your Honor. In this particular case, I believe we have a situation where North Carolina's assault with a deadly weapon with intent to kill is not a crime of violence. And we believe that that's the case because of the unique nature of the definition under the guidelines of what is a crime of violence and its requirement to communicate a threat and the receipt of a threat, that we need both the transmission and reception of a threat. Well, you would have a very difficult time convincing most people that assault with a deadly weapon with intent to kill was not a crime of violence. I realize it's not intuitive, Your Honor, and I'm not saying it's not a violent crime. What I'm saying is under the guidelines, a particular crime of violence requires a particular set of circumstances. And that particular set of circumstances of the categorical approach is the use, the attempted use, or the threatened use of force. And I don't want to totally distract you from this argument, but it seems like your response to Judge Agee sort of concedes the harmless error point, right? Because the district judge here says, listen, you might have found some technical line here, but we sentence based on facts. And as you aptly said, we can rearrange the deck chairs on the Titanic as much as we'd like. But fundamentally, the question here is, did the court reasonably sentence him? And would he have sentenced him the same way regardless of this crime of violence issue? And your response to Judge Agee says, yeah, this is a violent crime. Yes, it's really bad. And that leads me to think a reasonable judge could say, even if it doesn't meet the technical definition, I should sentence him as if it did. And that seems like what the district court did here. Right, and I have no doubt that's what the district court did, because the district court said that was what they were doing. And I appreciated your comments yesterday, and I agree with you that being a district court judge is a very, very hard job. And I guess what I'm trying to understand is, so I at least understand theoretically your technical arguments. But if you're right about those, doesn't that just lead you straight into harmless error? The district court was pretty clear here that if you found this unicorn rainbow theory, it didn't change the facts. And the facts here is that your client was a violent criminal. And I believe that that's why the judge says this, so that the harmless error issue is raised. I would argue that there is a procedural process that sentencing is required post-Booker. That we must correctly determine the guideline sentence. And that guideline sentence is not mandatory, but it at least has to be relevant. And I would argue that saying that... Why does it have to be relevant? I thought the court said it has to be considered, right? But here the court seems to say, I looked at it, right? The real answer to me is, is I have considered it, and I find it irrelevant. Because at the end of the day, your guy is a violent bad guy. And whether it meets some esoteric definition that nobody frankly understands, doesn't affect my fundamental discretion in deciding what his sentence is. I would argue that the discretion has to be exercised off the basis of a correct guidelines determination. But the court didn't seem to say that, right? It says the guidelines have to be considered. But the very nature of them being non-binding means they can't tie his hands in any way, right? They're not binding. Otherwise, Booker doesn't have force. Well, it does in some way change the relevance of the review by this court, if something is twice the guidelines or half the guidelines. Now, that being said... That may or may not make sense, and I understand that we've said that. But my point is, if they're not binding, if Booker means what it says, then they're one thing to consider, just like his childhood or the nature of the crime or anything else. But a reasonable district court could say, the guidelines don't make sense in this context, right? Rainbows and unicorns don't matter to me here. And so I'm going to ignore them completely, it seems like to me. But I think Gall says you can't ignore them completely. No, it just says you have to consider them. You have to consider. You have to go through the process and correctly determine them. Now, he can say whether I correctly determined them or not, here's what my result would be. But that cuts out the first step of the process. And the first step of the process is, is this a defendant with a 14 or is this a defendant with a 20? So the chairs on the deck of the Titanic must be in the right spot, even though we all know that it's going down. This is a criminal prosecution. I would argue yes. I would argue, again, it's a hard job. And I am technically nitpicking an issue that I think is very important in his particular case as to whether or not he walks in front of a judge with a 20 guideline as the judge determined or with a 14 or 12 guideline as I would suggest is appropriate. Now, they have, the Congress and the, sorry, Congress and the Sentencing Commission have defined what the guidelines are regarding a crime of violence. As we've seen, if they don't like your interpretation of those guidelines, they can change them, and they have. In this particular case, you understand the argument that it has to have a threat that is both given and received. And under North Carolina law. I'm sorry, Mr. Kilbourn. Sure. What's the support for that combination of both given and received? That would be Taylor, Your Honor. We argue that Taylor, examining the kidnapping statute, said that a threat of force must be communicated. That, in other words, it must be, it can't just be a generalized threat, that it must be individually communicated. So you're suggesting that communication is a two-way street in every instance? I believe in every instance it would necessarily be. Is that what the Supreme Court said? I would argue that in Taylor they did, that a generalized threat. Were they using communication in a more generic sense, with no indication that it was meant to apply in this context? Obviously I'm using communication in a particular sense, Your Honor, but I believe that's the sense that was intended in Taylor, that the threat was both given and received, and just giving threats is not a threatened use of force. Well, why don't you tell us specifically why you would, moving away from Carmel Serra for a moment, why you would say this is not a crime of violence? Well, here's the argument, as it was made below and as I've made it in the briefing, is that the categorical approach requires the use, attempted use, or threatened use of force. And a threat of force, we would argue under Taylor, must be communicated from the defendant committing the act to some second party who receives that threat. In other words, shouting to yourself is not really a threat if no one hears it. It needs a transmission and a receipt of a particular threat. So are you challenging the mens rea requirement here? I thought that was part of your argument. I believe they have the best of the mens rea question on recklessness. But what we are saying is that under a categorical approach, the North Carolina assault statute requiring an unequivocal appearance of an attempt with force or violence doesn't actually have to be communicated. In fact, in Muscle, White, and Star, it says that it's not necessary that the victim themselves be placed in fear in order to sustain a condition for assault. In other words, there has to be a communication forward of a threat, but there does not have to be the receipt of a threat. And I would argue that's where the federal law regarding communicating a threat as part of a threatened use of force differs from the North Carolina definition of what actually is an assault with a deadly weapon with intent to kill in this particular case. And North Carolina law says that no one has to know of the threat or violence for a conviction. I would argue that based upon Taylor and based upon the reading of the guidelines, the threatened use of force requires both. So let's look at a hypothetical. Let's say the personal call victim is looking one way. The assailant comes up behind him with an ax, takes a swing, but he misses. And so the purported victim never sees it. Ten other people standing around there do see it. Is the threat communicated in that circumstance? It's communicated to the third party who saw it. Now the tougher question, obviously, is if no one's there to see the tree fall in the forest, if no one's there to see the swing of the ax, is that actually a communicated threat? Let's say we caught it on video. It's not communicated to a person, but it's on the video. Is that sufficient? Someone's seen the video, so it's then communicated to a person. I would argue that it's both the transmittal and the receipt of a threat that leads to a threatened use of force. That if you threaten to use force and no one knows about it. Isn't that circular? Because you're saying the only instance is where nobody ever knows about it, but somebody is always going to know about it. Otherwise, it's not being prosecuted. So somebody has to have seen a video or observed it or something. Otherwise, it's not prosecuted. This seems like a fanciful hypothetical, right? The ax swing in the forest that nobody sees. How could that ever be an actual case? If your theory is right that just seeing it on video or some third party can be the one that receives the communication, it doesn't have to be received by the victim him or herself. The hypothetical I gave you in the briefing that I've stuck to is this idea of it being perceived by the defendant as a threat but not being perceived by the victim as a threat because they have some specialized knowledge that lets them know that they aren't threatened with that violence. That to me would qualify as an assault under North Carolina law, but it would not qualify as a communicated threatened use of force under the Federal Crime and Violence Statute. He communicated the threat, right? I give you the note and say I'm going to shoot you, or I guess in your example he just says it. He has communicated a threat. The victim happens to be unusually hardy or unusually thoughtful or smart or knowledgeable, but that doesn't interfere with the communication of a threat. I would argue it interferes with the receipt of the threat, that there actually is not under Federal law an actual threatened use of force if the other party does not correctly perceives that it is not actually a use of force under the circumstances. Again, I call these gold nuggets on purpose. This is not something that you'll encounter every day, but our argument is that it is not a clear categorical match because of North Carolina's determination that there is not a requirement that the victim be placed in fear to have an assault. So under Judge Agee's hypothetical, putting aside the existence of a video where bystanders swing at a victim with an axe, you don't think North Carolina would prosecute that as an assault with a deadly weapon with intent to kill? I believe they could because that threat in North Carolina does not have to be communicated. So if he came to the office and confessed and said, I swung an axe, that would be a communicated threat in North Carolina. It would be the ill-inclined local appearance or an attempt with force or violence to do some immediate harm. It would qualify under North Carolina statute. I would argue that it is not a communicated threatened use of force under the guidelines, and that's the subtle difference, I believe, that makes this not a categorical match. Okay. Thank you, Mr. Kilbourne. Thank you. The other issue, obviously, we have is one of the other issues that. . . You only have about 15 seconds. I know I only have about 15 seconds. One of the other issues I think is that there was not actually a substantial risk or death or serious bodily injury during his escape, and I don't believe there's any case that has been brought forward with a set of facts as . . . with a set of facts as less serious as ours where there has been a find of a force, but I'm sure I'll have a chance to talk to you all about that in a minute. Thank you. Ms. Reed. Good morning. May it please the Court, Mahogany Reed for the United States. I'll start with Mr. Shade's challenge to the calculation of his base offense level under 4B1.2. I understood Mr. Kilbourne this morning to concede that assault with a deadly weapon with intent to kill carries the required mens rea element to satisfy the use of force under the elements clause in 4B1.2A1. The only question raised today is whether assault with a deadly weapon with intent to kill requires a communicated threat and to what extent Taylor suggests that a victim is required to receive a threat. And I don't read Taylor to suggest that assault under North Carolina law requires that a victim personally perceive fear or receive fear based on the defendant's actions. I read Taylor to disclaim any suggestion that a communicated threat or a threat of force can be sort of abstract and objective in the way that the government argued in that case. Are you aware of any North Carolina state court case that suggests that it has to be a two-way line? I'm not aware of any North Carolina state court case that suggests that it has to be a two-way line. But assault under North Carolina law does require that the defendant's actions convey or communicate a threat. I understand Mr. Kilbourne to focus on the part of the definition of attempted battery assault that requires the unequivocal appearance of an attempt to commit an assault. But the sort of second part of that definition of assault says that the unequivocal appearance of an attempt has to place a reasonable person of reasonable firmness in apprehension of fear or harm. And we think that that satisfies the communication requirement to qualify as a threat of force under 4B1.2. How is that the case if the recipient never understands the threat to be existing? Yeah, I don't think that that is required, right? I think the question is whether the defendant's actions convey a threat necessarily such that a reasonable person who does perceive the defendant's actions would be placed in a reasonable fear of harm. And so, well, I guess the- Even if under the facts of the case, as Mr. Kilbourne would have it, that person never perceives it. It's just the objective. We're looking at this objectively. Is that your point? Yeah, I think so. I mean, I think it's important to distinguish between what I understood, at least before this morning, Mr. Kilbourne to be arguing, which is that the victim themselves in every single case has to be placed in fear, not necessarily that they have to sort of perceive the defendant's actions and, you know, not be placed in fear, which I think would be enough to satisfy the communicated threat, right? It would be conveyed, the defendant's threat would be conveyed to the victim, and whether the victim is actually placed in fear is irrelevant to the question because the defendant's actions were sufficient to place the victim or a reasonable person in the victim's shoes in fear of risk or bodily harm. But we don't read Taylor to require that a victim actually experience the feeling of fear based on the defendant's actions. That's just not what Taylor says. Can I ask the follow-up question? The hypothetical, I think we're addressing two hypotheticals. One is the, you know, they know the firing pin is out of the gun or whatever, that hypothetical. But we also asked to, like, swing the axe in the woods that nobody sees hypothetical. I wonder, would that satisfy the North Carolina requirement that there's an unequivocal appearance of an attempt, right? It seems like in that hypothetical, that one doesn't get us anywhere because the victim or nobody perceived any attempt. There was no appearance of an attempt absent a video or a third party, and so there would be no appearance in that case. So that hypothetical wouldn't satisfy under North Carolina. And so we're back to this hypothetical where we have a victim of unusual hardiness who is not scared. Yeah, I do question whether the hypothetical where the defendant swings the axe that no one sees would be prosecuted as an assault under North Carolina law. I did some surveying of North Carolina law, and I couldn't find a hypothetical or a case that sort of presents a similar set of facts, where a defendant takes actions that literally nobody sees or maybe that's caught by a third, you know, I just haven't found that case. Both because there's not an appearance, but also in your mind, that wouldn't be placing a reasonable person in fear because they didn't perceive anything. That's right, Your Honor. That's right, Judge Richardson. Now, with respect to Mr. Shade's proffered hypothetical of pulling the firing pin out of a firearm and pointing it at the individual who actually pulled the fire pin out of the firearm and recognized that the firearm was disabled, I think that that would qualify as an unequivocal attempt to commit an assault on behalf of the defendant. But as we explained in our brief, it would not satisfy the rest of the requirements under the assault, in that it would communicate to a person of reasonable firmness in knowing everything that the victim knows. And in this case, the victim knows that there's no firing pin in the firearm. It wouldn't place that person in fear of death or serious bodily injury. Back to the hypothetical of the ax in the woods, which seems to be getting quite a lot of time this morning. Is there any crime that that hypothetical defendant would be guilty of? Because it seems odd that we would give that individual a pass. Yeah. I have to think about that. I imagine theoretically there probably is a crime that that individual could be prosecuted for, but I don't think it's assault because it doesn't satisfy the communicated threat requirement. Well, but it's a little hard to imagine, right? Because I think your colleague agreed, if there's a third party that sees it, then it's a communicated threat and that's an assault. It doesn't have to be perceived by the victim. That's right. But if there's not a third party and there's not a video, it's not a prosecutable event, right? Because we don't know that it happened. It's a little odd to think about whether that's a crime or not. It would be a crime if somebody saw it, but it's not a crime if you don't get caught. I agree with you on that front, Judge Richardson. Not even for unicorns in that circumstance. What about if the defendant had a moment of contrition and just confessed and said, hey, nobody saw this, but I did it. I swung that ax. Corroborated confession wouldn't help, right? I don't think that would help. I still would have a hard time saying a prosecutor prosecuting that case on the basis of a defendant's confession alone to a crime that no one knows was committed and no one else witnessed. But I think all of this is sort of intellectual and interesting, and I'm happy to continue to engage, but I do want to just quickly jump to Judge Richardson's point from the beginning of Mr. Kilbourn's presentation, which is that whatever error the district court may have committed in treating Mr. Shade's conviction for assault with a deadly weapon with intent to kill as a crime of violence under 4B1.2, any error was harmless because the district court, considering all the facts in Mr. Shade's case, believed and repeated throughout the sentencing proceeding its belief that a sentence of 60 months would have been appropriate or a sentence based on a calculation of the guidelines that did treat Mr. Shade's conviction for assault with a deadly weapon with intent to kill as a crime of violence baked into the guidelines calculation. And I just do really also want to quickly respond to the suggestion that maybe the district court did not properly or go through the exercise of properly calculating Mr. Shade's guideline sentence. The district court did consider each of Mr. Shade's objections to the PSR, and ruled on each of those objections in reaching what Mr. Shade believes is an incorrect guidelines range, but a guidelines range nonetheless. And then thereafter went on to properly consider the 3553A factors in selecting a sentence near the bottom of Mr. Shade's advisory guidelines range. And just briefly, last point related to the 3C1.2 enhancement. I would just note that the district court properly determined that the nature of Mr. Shade's flight warranted the two-level enhancement under 3C1.2. In this case, we cite at pages 44 through 45 of our brief cases where this court in unpublished opinions has affirmed application of the enhancement where the defendant engaged in a high-speed chase and there was evidence of additional erratic driving behavior that placed the public at risk of death or serious bodily injury. Does it matter that the district court judge in this case sort of relied on his own personal knowledge of the road conditions and the like instead of, was there independent evidence of that? I don't think so. I think it was appropriate for the district court to take judicial notice about, it wasn't the road conditions, but it was sort of the fact that the area through which Mr. Shade fled included, and ran two red lights, included intersections that are two of the busiest intersections in the southern part of Buncombe County. I think it was appropriate for the district court to take judicial notice of that. The district court didn't say anything about the, you know, what the road conditions were on the day or at the moment of Mr. Shade's flight, but I do think that's a relevant consideration combined with just the mere fact that Mr. Shade drove against the flow of traffic to bypass traffic at two very busy intersections. We think that that is enough for application of the enhancement here. I mean, we also just briefly mentioned in our brief that Mr. Shade had in his possession three or four firearms. We think that also elevated the nature of the risk to bodily injury, not only to the public, but also to police officers, especially because we're dealing with a defendant who has in the past used a firearm to shoot at police officers in attempts to undermine their execution of their official duties. If the court has no further questions, we will rest on our brief on the remaining issues, and we ask that you affirm the district court's judgment. Thank you, Ms. Reed. Thank you. Thank you, Judge. I want to clear the deck of a couple of issues before we get back to what I think the court... Back to the Titanic? Back to the Titanic. And it feels like that some days, Your Honor. A significant amount of our briefing obviously dealt with the Second Amendment issues, but other panels have been working very hard, including I think just about everybody up here at some point has visited that issue in some other case. So we would argue that while we're not conceding the issue, every argument we could have made or have made has been addressed by another panel. So it will be another court that preserves any of those arguments for us if there's something in the future. But I did want to mention that because I know Ms. Reed had come all the way down here, and I didn't want to disappoint by not mentioning Bruin. The other thing, Your Honor, that obviously got some supplemental briefing was the issue of the motion to seal, and I think that there is some importance there. Generally, the government did not have a position at the time. I understand now they believe it's probably not a timely appeal, but I would encourage this court... The district court's never ruled on it, I think. The district court ruled once, and we filed basically a renewed motion on the same grounds. So it may be appropriate... You said he was giving you a do-over. He's giving a do-over. He's giving a mulligan. We would argue that there is some concern about the interpretation of the language that requires the balancing by the judge of these interests of the public and knowledge versus the protection... Again, Your Honor, I would love for this court, and again, I realize it may not be coming, I would love for this court to give some guidance to the district court on how to balance those issues in light of protected information. We have a ruling that seems to be subsumed within the final judgment. It seems like we have jurisdiction to review that. Obviously, ceiling questions often come up well after the final judgment, and they're often addressed in different contexts, and you may have other arguments to be made. Do you agree we have jurisdiction to review the first denial? I believe you do. I don't want to speak for the government, but I know they have... We believe you do. We believe that there was a final order issue with a chance to renew the order. Help me understand why you think the first order, forget what arguments you might or might not be able to make in a future proceeding, but just help me understand at its core, what do you think the district court got wrong in denying your request? We believe that there is a certain category, just like we've already acknowledged cooperation is a category, family information, children's information is a category. We believe that certain protected health information is also a category that should be given additional weight in the balancing test. For example, if a defendant says... Do you suggest that it has to be a categorical rule, that no medical information can ever be unsealed? I don't believe it's a categorical rule, but I believe... Then why? The district court didn't seem to say, I don't care at all about this. He just balanced it differently. It seemed like to me he made a reasonable set of choices. I don't believe, based upon his initial ruling, that he gave any weight to the fact that it was federally protected information, that this was health protected information. For example, if you're saying that I'm sick, and it's certainly relevant that I'm sick and that I have prostate cancer, but it's probably not relevant to unseal the medical records that talk about the operation to cure it and the after effects. That there is a line under which a defendant doesn't give up all of his health care privacy rights just by arguing that there is an issue. That's the issue that I wanted to bring to your attention, that in that balance... I thought the court... I need to go back and look at it more closely. I thought the court basically said, listen, there may be some parts of this that you can seal, but you've asked to seal all of this, and that's inappropriate. Whatever it is, you can't seal everything, including the very things that you're relying on in this case. The question we have on that order, whether that ruling was demonstrably wrong. That seemed to have been an eminently reasonable ruling at the time. Whether you could prevail on some narrower claim is not before us. Right. I would argue that in the balancing test, he did not utilize the protected medical information and give it the way that it should have. He dismissed your motion to seal without prejudice. Which oftentimes would tell us that's not final. If it's not final, we can't review it. Again, that's for the three of you all to work out. I know that there's a difference of opinion. We believe that we renewed the motion on the same grounds. It's going to go back down there under the same condition that it came up here. That's an important issue. I would argue that if you look at the overall nature of this particular case, and if you look at what we're arguing is a significant procedural problem with assault with a deadly weapon being determined as a guideline sentence, we think that there's a problem with basically saying the guidelines are irrelevant. We believe that the guidelines must be decided first, and if you miss the first step, that harmless error shouldn't save you because you're starting from the wrong basis. And that would be our argument as to why this particular case should be sent down for re-sentencing. Thank you, Your Honors. Thank you very much, Mr. Kilbourn. I know you've done this often, Mr. Kilbourn, to your credit. We want to thank you again for taking on this court-appointed work. We really appreciate all the lawyers who do it, and certainly you in particular for being frequently available to take on this responsibility. So thank you very much. And Ms. Rae, thank you very much for your argument.
judges: Albert Diaz, G. Steven Agee, Julius N. Richardson